## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:**<br><br>**B &D INVESTMENT SE**<br><br>JOINT DEBTORS IN POSSESION | CASE NO. 16-00978(BKT)<br><br> Chapter 11 |

## DISCLOSURE STATEMENT

### *TABLE OF CONTENTS*

Article I. INTRODUCTION

    Section I.1 Purpose of This Document

    Section I.2 Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

        Time and Place of the Hearing to Confirm the Plan:

        (a) Deadline for Voting to Accept or Reject the Plan:

        (b) Deadline for Objecting to the adequacy of Disclosure and Confirmation of the Plan

        (c) Identity of Person to Contact for More Information

    Section I.3 Disclaimer

Article II. BACKGROUND

    Section II.1 Description and History of the Debtor's Business

    Section II.2 Insiders of the Debtor

    Section II.3 Management of the Debtor Before and During the Bankruptcy

    Section II.4 Events Leading to Chapter 11 Filing

    Section II.5 Significant Events During Bankruptcy Case

        (a) Schedules, Statement of Financial Affairs and Creditor's Meeting:

        (b) Employment of Professionals

1

Section II.6 Projected Recovery of Avoidable Transfers

Section II.7 Claims Objections

Section II.8 Current and Historical Financial Conditions

Article III. THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

Section III.1 What is the Purpose of the Plan of Reorganization?

Section III.2 Unclassified Claims

(a) Administrative Expenses

(b) Priority Tax Claims

Section III.3 Classes of Claims and Equity Interests

(a) Classes of Secured Claims

(b) Classes of Priority Unsecured Claims

(c) Class [es] of General Unsecured Claims

(d) Class of Equity Interest Holders

Section III.4 Means of Implementing the Plan

(a) Source of Payments

Section III.5 Risk Factors

Section III.6 Executory Contracts and Unexpired Leases

Section III.7 Tax Consequences of Plan

Article IV. CONFIRMATION REQUIREMENTS AND PROCEDURES

Section IV.1 Who May Vote or Object

(a) What is an Allowed Claim or an Allowed Equity Interest?

(b) What is an Impaired Claim or Impaired Equity Interest?

(c) Who is Not Entitled to Vote

(d) Who can Vote in More Than One Class

Section IV.2 Votes Necessary to Confirm the Plan

(a) Votes Necessary for a Class to Accept the Plan

(b) Treatment of Non accepting Classes

Section IV.3 Liquidation Analysis

Section IV.4 Feasibility

    (a) Ability to Initially Fund Plan

    (b) Ability to Make Future Plan Payments and Operate Without Further
Reorganization

Article V. EFFECT OF CONFIRMATION OF PLAN

    Section V.1 DISCHARGE OF DEBTOR

    Section V.2 Modification of Plan

    Section V.3 Final Decree

Article VI. OTHER PLAN PROVISIONS

**ARTICLE I.        INTRODUCTION**

This is the Disclosure Statement and Plan (the "Disclosure Statement") in the chapter 11 case of B **& D INVESTMENT SE** hereinafter the Debtor.  This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by the Debtor on   MAY 10, 2016.  ***YOUR RIGHTS MAY BE AFFECTED.   YOU SHOULD READ THE PLAN AND THIS DISCLOSURE STATEMENT CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.***

**Section 1.1  Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.,* what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether confirm the Plan,
- Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

4

**Section 1.2  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

**Time and Place of the Hearing to Confirm the Plan:**

The hearing where the Court will determine whether to approve the Disclosure Statement and/or confirm the Plan will take place on _____2012

**(a) Deadline for Voting to Accepting or Reject the Plan:**

If you are entitled to vote accept or reject the plan, you will be receiving in the coming days a ballot with the order of hearing and a copy of the Disclosure Statement and Plan of Reorganization.  With the Ballot, you will receive notice regarding the due date to accept or reject the Plan.  *See* section IV.A. Below for a discussion of voting eligibility requirements.

**(b) Deadline for Objecting to the Adequacy of Disclosure and Confirmation of the Plan**

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the Debtor as directed and ordered by the Court.

**(c) Identity of Person to Contact for More Information**

If you want additional information about the Plan, you should contact debtor' counsel   GARCIA- ARREGUI & FULLANA PSC. 252 PONCE DE LEON AVE. SUITE 1101 SASN JUAN PR. 00918. TEL 787 766-2530 EMAIL isabelfullana@gmail.com

5

## Section 1.3  Disclaimer

The Court's approval of this Disclosure Statement is subject to the hearing on the Confirmation of the Plan such hearing has been scheduled for _____2016.

## ARTICLE II

## Section 2.1  Description and History of the Debtor's Business

The debtor is a special partnership under applicable provisions as the owner of a parcel of land located in Quebradillas Puerto Rico. The purpose of said partnership at the time of its creation was the development, segregation and sale of lots as approved and pertaining to the original parcel of land.  Out of which ten lots were sold in the initial stage. Otherwise the debtor has no business operation, no income generating activity with the exception of the sale of the remaining lots located as Barrio Terranova , Quebradillas , Puerto Rico.

The present petition was filed in order to protect the assets of the estate from the foreclosure of its interest in real property essential to successful reorganization efforts and furthermore to preserve or create some value that would otherwise be lost outside of bankruptcy.

## Section 2.2  Events Leading to Chapter 11 Filing

Banco Popular filed a foreclosure proceeding against Debtor in Possession and other related entities, Motel Tropical Inc, Ceda Media Inc,, Mr Manuel Babilonia Santiago and Ms. Milta Cortes in the Superior Court of Arecibo Puerto Rico.

6

**Section 2.3 Significant Events during the Bankruptcy Case**

**(a) Schedules, Statement of Financial Affairs and Creditors' Meeting**

The   341 hearing was held and closed on  March 31,   2016

**(b) Employment of Professionals**

Debtor's counsel Garcia- Arregui & Fullana PSC was appointed per order
dated April 7, 2016   (Docket  # 19 )

**Section 2.4 Projected Recovery of Avoidable Transfers**

The Debtor has not yet completed its investigation with regard to prepetition
transactions.  If you received a payment or other transfer within ninety days of the
bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid
such transfer. None the less it anticipates filing a complaint for the turnover of property
and or fraudulent conveyances.

**Section 2.5  Claims Objections**

Except to the extent that a claim already allowed pursuant to a final non-
appealable order, the Debtor reserves the right to object to claims.  Therefore, even if
your claim is allowed for voting purposes, you may not be entitled to a distribution if and
objection to your claim is later upheld.  The procedures for resolving disputed claims are
set forth in Article V of the Plan.

**Section 2.6  Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in **Exhibit A.**

7

# ARTICLE III.

## THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS IN THE INDIVIDUAL CHAPTER 11 CASE

### Section 3.1  What is the Purpose of the Plan of Reorganization?

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.   If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### Section 3.2  Unclassified Claims

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

#### (a)  Administrative Expenses

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under 507(a) (2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.   The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

8

**(b)  Priority Tax Claims**

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the other of relief.  The debtor is up to date with all Priority Tax claims.  The same have been timely filed and paid.

## Section 3.3 Classes of Claims and equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**(a)  Class 1 Class  of Secured Claims :**

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor allowed claim, the deficiency will be classified as a general unsecured deficiency claim.

Banco Popular de Puerto Rico is the holder of several mortgages notes encumbering the property located at Barrio Terranova, Quebradillas, Puerto Rico

(1) Distribution – Class13 shall consist of the Claim of Banco Popular  as Finally allowed.

During that year the Debtor will endeavor the sale of at least one of the lots located at Barrio Terranova, Quebradillas and the proceeds from such sale shall be tendered in payment to Banco Popular de Puerto Rico

If no sale is completed within one year, Debtor may tender in payment of the allowed claim one of the lot in full satisfaction of the  amount claimed.

9

**(2)** Impairment and Voting:

Class 1 Banco Popular de Puerto Rico's claim is unimpaired under the Plan, thus Banco Popular de Puerto Rico is deemed to have accepted the Plan as proposed.

### Classes of Priority Unsecured Claims

**Class 2** Certain priority claims that are referred to in §§ 507(a) (1), (4), (5), (6) and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

### Class 3 of General Unsecured Claims

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

This claim shall may receive any dividends or payment in the plan if after paying the debt to Banco Popular there are proceeds to be distributed.

**(2)** Impairment and Voting:

Class 3 General Unsecured claim is impaired under the Plan, thus has a right to vote in favor or against the Plan..

### Class 4 Class of Interest

This class   consist of the members of the partnership.  They will not receive or retain any property under the Plan unless there is a surplus after payment to Banco Popular and Priority claimants and general unsecured claimants

### Section 3.4 Means of Implementing the Plan

**(a)   Source of Payments**

10

The debtor during the term of one-year will endeavor to sell the properties any proceeds will be tendered in payment of the amount owed. Once the term of one year elapses and no sale is completed Debtor will transfer in payment one of the lots in satisfaction of  Banco Popular 's Claim

## Section 3.5 Risk Factors

The proposed Plan has the following risks: Debtor inability to obtain a buyer within the one-year term.

## Section 3.6 Executory Contracts and Unexpired Leases

Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the plan, unless the court has set and earlier time.

All executory contracts and unexpired leases that are not listed will be rejected under the plan.  Consult your adviser or attorney for more specific information about particular contracts or leases.  Upon information and belief there are no executory contracts.

If you object to the rejection of your contract or lease, you must file and serve your objection to the plan within the deadline or objecting to the confirmation of the Plan.

11

*The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract Is thirty days from the entry of an order rejection such Executory Contract.* Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

### Section 3.7 Tax Consequences of Plan

Creditors and Equity Interests Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/ Or Advisors. Upon the sale of the property Debtor will be subject to the payment of capital gain depending on the final purchase price.

### ARTICLE IV.

### CONFIRMATION REQUIREMENTS AND PROCEDURES

Section 4.1 To be confirmable, the plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditors and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not only requirements for confirmation.

## Section 4.2 Who May Vote or Object

Any party in interest may object to the confirmation of the plan if the Party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In the case, the plan proponent believes that classes are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the plan, they are assumed to have accepted the plan.

### (a)   What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the debtor has scheduled the claim on the Debtors schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditors has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditors or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the federal rules of Bankruptcy Procedure.

13

***The deadline for filing a proof of claim in the case is  June 16, 2016.***

### What Is an Impaired Claim or Impaired Equity Interest?

As note above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the plan alters the legal, equitable, or contractual rights of the members of that class.

### (c) Who is Not Entitled to Vote?

The holders of the following types of claims and equity interests are *not* entitled to vote:

- Holders of claims and equity interests that have been disallowed by an order of the Court;

- Holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to § 507 (a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses

14

*Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan [and to the Adequacy of the Disclosure Statement.*

### (b)   Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as and unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

### Section 4.3 Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

### (a)   Votes Necessary for Class to Accept the Plan

A class of claims accepts the Plan both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who votes, cast their votes to accept the Plan.

A class of equity interests accepts the plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the case, who vote, cast their votes to accept the plan.

15

### (b)  Treatment of Non accepting Classes

Even if one more impaired classes reject the plan, the court may nonetheless confirm the plan if the non accepting classes are treated in the manner prescribed by 1129(b) of the Code.  A plan that binds non accepting classes is commonly referred to as a "cram down" plan.  The Code allows the plan or bind non accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a) (8) of the Code, does nor "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the plan.

***You should consult your own attorney if a "cram down" confirmation will affect your claim or equity interest, as the variation on this general rule are numerous and complex***

### Section 4.4 Liquidation Analysis

To confirm the plan, the court must find that all creditors and equity interest holders who do not accept the plan will receive at least as much under the plan as such claim and equity interest holders would receive in a chapter 7 liquidation.   The liquidation value of the Estate is 163,771.50.   A Liquidation analysis is attached to this Disclosure Statement as Exhibit B

### .Section 4.5      Feasibility

The Court must find that confirmation of the plan is not likely to be followed by the liquidation, or the further financial reorganization, of the debtor or nay successor to the debtor, unless such liquidation or reorganization is proposed in the plan.

16

**(a)  Ability to Initially Fund Plan**

The plan proponent believes that the debtor will have enough cash on hand on the effective date of the plan to pay all the claims and expenses that are entitled to be paid on that date.

**Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The plan proponent must also show that it will have enough cash over the life of the plan to make the required plan payments.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

### ARTICLE V

Section 5-1.  **Means for Execution of the Plan**

It is anticipated that the proceeds of the sale of all or several of the lots will be sufficient to pay in full the allowed secured claim of Banco Popular de Puerto Rico and any amounts due to CRIM.

Section      5-2. **Corporate Management.**

It is anticipated that the present management will continue to oversee the operation of the reorganized debtor. Mr. Manuel Babilonia Santiago is presently the administrator and managing partner

Section 5-3. **<u>Reverting of Property</u>**. Except as otherwise provided in this Plan, after payment of Administrative Expense Claims, Priority Claims, except Priority Tax Claims, and Convenience Claims, Debtor shall transfer all remaining funds and the Estate's Claims and Causes of Actions, as well as all other proceeds to which Debtor or the Reorganized Debtor may be entitled, . The payments by the Debtor will be

made from available funds originating from the sale of Properties.

Section 5-4 <u>Estate's Claims and Causes of Actions.</u> The Estate's Claims and Causes of Action are hereby preserved and retained for enforcement by Debtor after the Effective Date.

## ARTICLE VI
## IMPLEMENTATION OF THE PLAN

Section 6-1 <u>Method of Distributions under the Plan.</u>

(a) <u>In General.</u> Subject to Bankruptcy Rule 9010, all distributions under the Plan to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Distribution Record Date, unless Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. Debtor, the Reorganized Debtor shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.

(b) <u>Form of Distribution.</u> Any payment of Cash made pursuant to the Plan shall be made by check, provided, however, that after the occurrence of the Effective Date, Debtor, the Reorganized Debtor is not obligated to make any Cash payment under the Plan unless the payment exceeds ten dollars ($10); provided, further, that Cash equal to 100% of the distributions to which the holder of a Claim would be entitled under the Plan if the payment to such holder was less than or equal to ten dollars ($10.00) shall be maintained in a reserve (the "Small Payment Reserve") for the benefit of such holder until an aggregate of at least ten dollars ($10.00) is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled.

(c) <u>Distribution to be on Business Day.</u> Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next

succeeding Business Day.

(d) <u>Fractional Dollars.</u> Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of $0.50 or less, and rounding up in the case of more than $0.50).

(e) <u>Distribution to Holders as of the Distribution Record Date.</u> As of the close of business on the Distribution Record Date, the claims register shall be closed. Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date, unless otherwise provided for by order of the Bankruptcy Court.

Section 6.2 <u>Objections to Disputed Claims.</u> Any objections to Claims against Debtor shall be prosecuted by the Debtor, or the Reorganized Debtor, including any application to estimate or disallow Claims for voting purposes. Debtor or the Reorganized Debtor shall reasonably cooperate with each other in prosecuting any such objections.

Section 6.3 <u>Deadlines for Objecting to Disputed Claims.</u> Except as otherwise provided by order of the Bankruptcy Court with respect to any Claim, the Debtor or the Reorganized Debtor may file an objection to such Claim or otherwise dispute such Claim until the later of (i) the date that such Claim becomes due and payable in accordance with its terms, or (ii) the Effective Date.

Section 6.4 <u>Estimation of Claims.</u> Debtor, or the Reorganized Debtor, may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim. Debtor or the Reorganized Debtor shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation on such Claim. If the Bankruptcy Court determines the maximum limitation of such Claim, such

determination shall not preclude Debtor, or the Reorganized Debtor, from pursuing any additional proceedings to object to any ultimate payment of such Claim. If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan. All such proceedings are cumulative and not exclusive remedies

## ARTICLE VII
## VOTING ON THE PLAN

Section 7.1 <u>Voting of Claims.</u> Each holder of an **Allowed Claim** in an impaired Class which retains or receives property under the Plan shall be entitled to vote separately. Any claim for damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or its properties or agents, successors, or assigns unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor or the Reorganized Debtor on or before forty-five (45) days following the Confirmation Date.   Unless otherwise ordered by the Bankruptcy Court or provided for in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan.

## ARTICLE VIII
## RELEASE AND DISCHARGE OF CLAIMS

Section 8-1 <u>Discharge</u>.   Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final satisfaction, settlement, release and discharge as against Debtor of any debt of Debtor that arose before the Effective Date, and any debt of Debtor of a kind specified in Section 502(g), 502(h), or 502(I) of the Bankruptcy Code, and all Claims against Debtor or its Estate of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (I) a proof of claim based on such debt, obligation or equity interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim is Allowed under Section 502 of the Bankruptcy Code, or (iii) the holder of

20

such Claim has accepted the Plan.

Section 8-.2 <u>Injunction Relating to the Plan</u>. As of the Effective Date, all Persons will be permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against Debtor, its Estate, or the Reorganized Debtor, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged pursuant to the Plan, expect to the extent expressly permitted under the Plan

Section 8-.3 <u>Cancellation of Existing Indebtedness and Liens</u>. Except as may otherwise be provided in the Plan, on the Effective Date, all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against Debtor, together with any and all Liens securing the same, shall be canceled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, and Debtor's obligations there under shall be deemed cancelled, discharge and released.  To the extent deemed necessary or advisable by Debtor or the Reorganized Debtor, any holder of a Claim shall promptly provide Debtor or the Reorganized Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, discharge or release, including the cancellation, discharge or release of any Lien securing such Claim.

Section 8-.4 <u>Setoff</u>. Except as otherwise provided herein, nothing contained in the Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person.

## ARTICLE IX

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

Section 9-1 <u>Conditions Precedent to Effectiveness</u>. The Plan shall not become effective and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or such conditions shall have been waived pursuant to Section 10.2 hereof:

a) The Confirmation Order, in form and substance reasonably acceptable to

Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

b) each of the Plan Documents, in form and substance reasonably acceptable to Debtor, (I) shall have been executed, delivered and, if necessary, properly recorded, (ii) shall have become effective, and (iii) shall have been filed with the Bankruptcy Court;

c) All actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective; and

d) The Estate shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date, including without limitation, sufficient Cash to establish the Class 5 Claims Reserve as to those claims to be paid by Debtor, or the Reorganized Debtor.

e) Judgment granting damages to debtor and recovery of funds expended is entered and is final.

Section 9-2 <u>Waiver of Conditions</u>. Debtor may waive one or more of the conditions precedent to the effectiveness of the Plan set forth in Section 9.1 above, except that Debtor may not waive the condition that the Estate will have sufficient Cash to meet all of Debtor's or the Reorganized Debtor's or the Reorganized Debtor's payment and funding obligations under the Plan on the Effective Date.

## ARTICLE X
## RETENTION OF JURISDICTION

Section 10-1 <u>Retention of Jurisdiction</u>. After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to the Bankruptcy Case and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code:

a) To hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any disputed Claim;

b) To hear and determine any and all applications by Professionals for

compensation and reimbursement of expenses pursuant to Section 2.2 (c) hereof;

c) To hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and fix and allow any Claims resulting there from;

d) To determine any and all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the Confirmation Date;

e) To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan.

f) To enforce the provisions of the Plan subject to the terms thereof;

g) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Documents or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

h) To determine such other matters as may be provided for in the Confirmation Order.

## ARTICLE XI

## MISCELLANEOUS

Section 11-1 Continuation of Injunctions or Stays until Effective Date. All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 11-2 Exemption from Transfer Taxes. In accordance with Section 1146(c) of the Bankruptcy Code.

a) the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by the Plan,

b) the making, delivery, creation, assignment, amendment or recording of any

23

note or other obligation for the payment of money or any mortgage, or other security interest under, in furtherance of, or in connection with the Plan,

      c) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.   Consistent with the foregoing, officials of a governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

     Section 11-3. <u>Amendment or Modification of the Plan</u>. Alterations, amendments or modifications of the Plan may be proposed in writing by Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Section 1122 and 1123 of the Bankruptcy Code, and Debtor shall have complied with Section 1125 of the Bankruptcy Code.   The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code.   A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.   Debtor or the Reorganized Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit hereto or in any Plan Document.

Section 11-4. <u>Severability</u>. If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon Debtor=s request, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provisions shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is valid and enforceable according to its terms.

Section 11-5. <u>Revocation or Withdrawal of the Plan</u>. Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against Debtor or any other Person or to prejudice in any manner Debtor's rights or those of any Person in any further proceeding involving Debtor.

Section 11-6. <u>Binding Effect</u>. The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

Section 11-7. <u>Notices</u>. All notes, requests and demands to or upon Debtor shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by  facsimile transmission, when received and confirmed, addressed as follows:


B& D INVESTMENTS SE

To the attention of

**García- Arregui & Fullana PSC**
**252 Ponce de León Ave.**
**Citibank Towers Suite 1101**

**San Juan, PR 00918**
**Tel 787 766 2530**
**Fax 787 756 7800**

Section 11-.8. <u>Dissolution of Committee</u>. On the Effective Date, any Committee shall dissolve and the members of the Committee shall be released and discharged from all rights and duties arising from or related to this Bankruptcy Case.  On such date, all of Debtor's claims or rights of action, if any, against any member of the Committee, and any officer, director, employee or agent of a Committee member shall be compromised, settle, and released in consideration of the terms of this Plan.

Section11-9. <u>Governing Law</u>. Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan or the Plan Documents provide otherwise, the rights and obligations arising under this Plan shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Puerto Rico.

Section 11-10 <u>Withholding and Reporting Requirements</u>. In connection with the consummation of the Plan, Debtor, the Reorganized Debtor, , as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

Section 11- 11. <u>Plan Documents</u>. Upon filing with the Bankruptcy Court, the Plan Documents may be inspected at the offices of the Clerk of the Bankruptcy Court during normal court hours.  Holders of Claims may obtain a copy of the Plan Documents upon written request to Debtor in accordance with Section 12.7 hereof.  The Plan Documents are incorporated into and made a part of the Plan, as if fully set forth in full herein.

Section 11-12 <u>Post-Confirmation Fees, Final Decree</u>. Debtor shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. '1930(a) (6) and the filling of post-confirmation reports, until a final decree is entered or as otherwise provided by the Bankruptcy Court.  A final decree shall be entered as soon as practicable after initial distributions have commenced under the Plan.

Section 11-13. <u>Headings</u>. Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

Section 11-14. <u>Filing of Additional Documents</u>. On or before substantial

consummation of the Plan, Debtor or the Reorganized Debtor shall file with the
Bankruptcy Court any agreements or other documents that may be necessary or
appropriate to effectuate and further evidence the terms and conditions hereof.

Section 11-15. Inconsistency. In the event of any inconsistency between the Plan
and the Disclosure Statement, the Plan Documents or any other instrument or
document created or executed pursuant to the Plan, the terms of the Plan shall
govern.

## ARTICLE XII

### Section 12-1        Modification of Plan

The plan proponent may modify the plan at any time before confirmation of the plan.
However, the court may require a new disclosure statement and/or re-voting on the plan.

The plan proponent may also seek to modify the plan at any time after confirmation
only if (1) the plan has not been substantially consummated *and* (2) the Court authorizes
the proposed modification after notice and a hearing.

### Section 12-2        Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal
Rules of Bankruptcy Procedure, the plan proponent, or such other party as the Court shall
designate in the plan confirmation order, shall file a motion with the court to obtain a final
decree to close the case.  Alternatively, the court may enter such final decree on its own
motion.

 / S / MANUEL  BABILONIA SANTIAGO

**RESPECTFULLY SUMITTED**, in San Juan, Puerto Rico, this 10TH day of May 2016

**I HEREBY CERTIFY** that on this date, I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF System, which will send notification of such filing to
the parties appearing in said systems including the US Trustee.

/ S / Isabel M. Fullana
**Isabel M. Fullana**
**USDC No.: 12802**


**GARCIA-ARREGUI & FULLANA PSC.**

**Attorney for Debtor**
**252 Ponce de León Ave.**
**Citibank Tower, Suite 1101**
**Hato Rey, PR 00918**
**Tel.: (787) 766-2530**
**Fax: (787) 756-7800**
Email: ifullana@garciaarreguifullanalaw.com
isabelfullana@gmail.com

# EXHIBITS

**Exhibit A**

**Exhibit B**

**Exhibit C**

| Debtor | **B & D Entreprises S.E.** | | Case number *(if known)* | **3:16-bk-978** |
| --- | --- | --- | --- | --- |
| | Name | | | |

Exhibit  A

☐ Yes Fill in the information below.

**Part 7:**   **Office furniture, fixtures, and equipment; and collectibles**

38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?

■ No.  Go to Part 8.
☐ Yes Fill in the information below.

**Part 8:**   **Machinery, equipment, and vehicles**

46. Does the debtor own or lease any machinery, equipment, or vehicles?

■ No.  Go to Part 9.
☐ Yes Fill in the information below.

**Part 9:**   **Real property**

54. Does the debtor own or lease any real property?

☐ No.  Go to Part 10.
■ Yes Fill in the information below.

55.   Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building, if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
| --- | --- | --- | --- | --- |
| 55.1.  **Carr #2 KM110 KM 7 Blvd # 2 Isabela, PR 00662, ,<br>Rustica; Remanente: Predio radicado en le Barrio Terranova de Quebradillas PR con una cabida de 11681.1890mc.** | Fee Simple | $934,495.00 | | $934,495.00 |

56.   **Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets.
Copy the total to line 88.

| $934,495.00 |
| --- |

57.   **Is a depreciation schedule available for any of the property listed in Part 9?**
■ No
☐ Yes

58.   **Has any of the property listed in Part 9 been appraised by a professional within the last year?**
■ No
☐ Yes

**Part 10:**   **Intangibles and intellectual property**

59. Does the debtor have any interests in intangibles or intellectual property?

■ No.  Go to Part 11.
☐ Yes Fill in the information below.

Official Form 206A/B                Schedule A/B Assets - Real and Personal Property

Software Copyright (c) 1996-2016 CIN Group - www.cincompass.com

# EXHIBIT B

## LIQUIDATION ANALYSIS

| ASSETS | ESTIMTATED VALUE | LIQUIDATION VALUE | LIEN |
|---|---|---|---|
| Parcel of land<br>Located at Barrio<br>Terranova,, Quebradillas<br>Consisting of several<br>Lots totaling<br>11681.189sq.meters | $934,495.00[1] | $654,146.50 | $ 465,000.00 |

Estimated liquidation value     189,146.50

Chapter 7 Expenses*

| | |
|---|---|
| Legal fees | 5,000.00 |
| Accounting fees | 2,500.00 |
| Taxes on sale | |
| Chapter 7 fees | |

Amount available for payment other than Chapter 7 expenses     $32,707.30[2]

Administration Claims (Chapter 11)*     $148,939.20

| | |
|---|---|
| Legal fees | 10,000.00 |
| Notary fees | 8,000.00 |
| Accounting fees | 2,500.00 |
| Chapter 11 Trustees fees. | 4,875.00 |
| Capital tax | |

Amount available for distribution to unsecured creditors     $ 163,771.50

[1] Value based on $80.00 per square ft.
[2] Pursuant to section 326(a) of title 11 USCA
*estimated

PABLO SANTOS RIVERA
INVESTIGADOR DE TITULO
P.O. BOX 141323
ARECIBO, PUERTO RICO 00614
TEL(787)638-4077

## ESTUDIO DE TITULO

**SOLICITANTE:** Sr. Miguel Babilonia

**CERTIFICO:** Que he examinado los libros de este registro relacionado con el título de la finca #2571 encontrando la siguiente información:

**DESCRIPCION:** Rústica: Remanente: Predio radicada en el Bo. Terranova de Quebradillas, Puerto Rico con cabida de 11,681.1890 m/c. Lindes al Norte – Zona marítima; Sur – predios segregados; Este – predios segregados y Tom Henslin y Oeste – uso público #3, Roberto Cabral y Ángel Lugo.

**TITULO:** Inscrita a favor de B- and- D. Enterprises, S.E. representado por Manuel Miguel Babilonia Santiago esta finca que adquiere por resto. Así resulta del registro y de escritura #145 otorgada en Quebradillas, Puerto Rico el 14 de noviembre de 2000 ante el Not. Francisco J. Arraiza Donate.

**INSCRIPCION:** Al folio #75 tomo #220 de Quebradillas. Registro de la Propiedad de Arecibo sección II.

**GRAVAMENES:**
Servidumbre a favor de A.E.E.

Hipoteca en garantía de un pagaré, bajo affd. #23,655, a favor de Banco Popular de Puerto Rico, o a su orden, por la suma de $350,000.00 interés 1% sobre el prime rate de New York y vence a la presentación. Así resulta del registro y de escritura #145 otorgada en Quebradillas el 14 de noviembre de 2000 ante el Not. Francisco J. Arraiza Donate. Inscripción 8ª.

Por la escritura #992 otorgada en Mayagüez el 9 de septiembre de 2003 ante el Not. Adrián Hilera Torres se modifica la hipoteca antes mencionada en cuanto al interés que sea 9.99% anual disponiéndose que en caso de mora en el pago del principal o el interés de la obligación devengará interés de mora al añadir dos puntos porcentuales al tipo pactado en este pagaré desde la fecha del incumplimiento hasta el pago total de la deuda. A tenor con el artículo 145 de la Ley Hipotecaria, 30 L.P.R.A. sección 2469 se extiende a 35 años a partir de la fecha del otorgamiento de la presente escritura. Al margen de la inscripción 8ª.

Hipoteca en garantía de un pagaré, bajo affd. #26,127, a favor del Banco Popular de Puerto Rico, o a su orden, por la suma de 40,000.00 interés al ½ % sobre la tasa de interés preferencial y vence a la presentación. Sujeta a la cláusula de sustancias peligrosas. Así resulta del registro y

**Finca: #2571**

de escritura #84 otorgada en Quebradillas el 23 de mayo de 2002 ante Francisco J. Arraiza Donate. Inscripción 11ª.

Por la escritura #996 otorgada en Mayagüez el 7 de septiembre de 2004 ante el Not. Adrián Hilera Torres se modifica la hipoteca antes mencionada en cuanto al interés que será 9.99% anual disponiéndose que en caso de mora en el pago del principal o el interés de la deuda devengará interés de mora al añadir dos puntos porcentuales al tipo pactado en este pagaré e desde la fecha del incumplimiento hasta el pago total de la deuda. A tenor con el artículo 145 de la Ley Hipotecaria, 30 L.P.R.A. sección 2469 se extiende a 35 años a partir de la fecha del otorgamiento de la presente escritura. Al margen de la inscripción 11ª.

Hipoteca en garantía de un pagaré, bajo affd. 15461, a favor de Westernbank Puerto Rico, o a su orden, por la suma de $75,000.00 interés a dos puntos porcentuales sobre el New prime rate y vence a la presentación. Sujeta a la cláusula de sustancias peligrosas. Así resulta del registro y de escritura #277 otorgada en San Juan el 7 de mayo de 2004 ante el Not. Francisco J. Biaggi Landrón. Inscripción 12ª.

Registro de Embargo de E.L.A., E.U.A., C.R.I.M. y Ley 12 – Negativo

Sentencia – Negativo

Bitácora –Negativo

Debido al sistema de bitácora electrónica utilizada en esta sección, no podemos precisar que exista algún documento adicional relacionado con esta finca.

En Arecibo, Puerto Rico a 21 de enero de 2016 a las 9:00 a.m.

Pablo Santos Rivera
Investigador de Título