**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 16-01148 (EAG) |
| MANUEL M. BABILONIA SANTIAGO and MIRTA CORTES, | |
| DEBTORS. | |
| IN RE: | CASE NO. 16-00978 (EAG) |
| B& D ENTERPRISES, S.E., | |
| DEBTOR. | FILED & ENTERED ON 03/31/2022 |

**OPINION AND ORDER**

Pending before the court in the two cases of caption are motions for the transfer of property free and clear of liens and the oppositions to them.  Also pending are a motion to withdraw consigned funds and an informative motion concerning insurance proceeds held in a related party's bank account, both filed by Banco Popular de Puerto Rico ("Banco Popular" or "BPPR") in case 16-01148, which are also opposed.  For the reasons stated below, the court grants the two transfer motions and the motion to withdraw consigned funds, and notes the motion to inform.

**I.     Jurisdiction.**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11

Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.).[1] This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. Procedural History.

On February 18, 2016, Manuel M. Babilonia-Santiago and Mirta Cortés (together, "Babilonia") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Babilonia case"). (Case No. 16-01148, Dkt. No. 1.) B&D Enterprises S.E. ("B&D"), a special partnership the two owned and created to develop and sell a parcel of land in Quebradillas, Puerto Rico, filed under chapter 11 a week earlier, on February 11, 2016 (the "B&D case"). (Case No. 16-00978, Dkt. No. 1.) Banco Popular filed proofs of claim in both cases corresponding to money loaned, of which a portion was secured by real property.[2] (Case No. 16-01148, Claims Register No. 10-1; Case No. 16-00978, Claims Register No. 1-1.)

During the pendency of the bankruptcy cases, Babilonia and B&D (together, the "debtors") each entered into stipulations with Banco Popular outlining the treatment of the creditor's claims. (Case No. 16-01148, Dkt. No. 75; Case No. 16-00978, Dkt. No. 47.) In the

---

[1]/Unless otherwise indicated, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532. All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure, and all references to "Rule" are to the Federal Rules of Civil Procedure. All references to "Local Bankruptcy Rule" are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the District of Puerto Rico. And all references to "Local Civil Rule" are to the Local Rules of Civil Practice of the United States District Court for the District of Puerto Rico.

[2]/While the two cases are not substantively or administratively consolidated, the parties have treated the Babilonia case as the lead case, with Banco Popular explaining that "the plan in the Babilonia case 'provided for a de facto consolidation' of the two cases and 'consolidated treatment' of BPPR's claims." Banco Popular de P.R. v. Santiago (In re Santiago), 2020 Bankr. LEXIS 3604, at *2 n.5 (B.A.P. 1st Cir. Dec. 23, 2020). The bankruptcy court and the United States Bankruptcy Appellate Panel for the First Circuit (the "BAP") have mostly treated the Babilonia as the lead case, and the court will continue to do so here.

Babilonia case, the stipulation was approved by the court on September 27, 2016.  (Case No. 16-01148, Dkt. No. 85.)  The stipulation in the B&D case was approved by the court on August 24, 2016.  (Case No. 16-00978, Dkt. No. 51.)

While there are differences between the two stipulations that are not relevant for purposes of this opinion and order, both imposed upon the respective debtors an obligation to "endeavor to sell any and all of the real estate . . . that form[ed] part of BPPR's collateral" to "generate sufficient proceeds" to satisfy its secured claim in the respective cases within one year.[3]  (Case No. 16-01148, Dkt. No. 75 at p. 4.)  If no sale occurred within that period, the stipulation provided that "[the debtors] shall deliver and tender any and all of the remaining Collateral to [Banco Popular] free and clear of all liens, claims or encumbrances, in full satisfaction and payment of the outstanding balance" of its secured claim.  (Case No. 16-01148, Dkt. No. 75 at p. 5.)

The stipulations went on to state that in the event of default (the "Default Clause"):

[a]ll of the Loans, Collateral, BPPR Claims and Debtors' obligations with BPPR shall revert to their original, pre-petition state, and their indebtedness shall become immediately due and payable without further notice by BPPR, and BPPR shall have the right to enforce any and all remedies under this Stipulation, Loan Documents, at law or in equity.

(Case No. 16-01148, Dkt. No. 75 at p. 7.)

The stipulation also included a ratification provision (the "Ratification Clause"):

It is hereby understood and agreed by each of the Parties hereto that this agreement is not intended to constitute an extinctive novation . . . of the obligations and undertakings of the Parties under any of the Loans, the Guarantees, or the Loan Documents regarding such Loans to date.  Debtors

---

[3] The citations to the stipulation are taken from the stipulation filed in the Babilonia case, which does not differ materially from the B&D stipulation.

3

hereby ratify, reaffirm, confirm, consent to and acknowledge all of the terms, priority and conditions of security interests, mortgages or liens over the Collateral provided for in the Loans, the Collateral, and the BPPR Claims, as well as Debtors' obligations under such Loan Documents, until the confirmation of the Chapter 11 Plan.

Id.

In the B&D case, the stipulation does not reference the plan because the stipulation was filed after the plan. (Case No. 16-00978, Dkt. No. 30.) Instead, the plan provides as treatment of Banco Popular's secured claim that "[i]f no sale [wa]s completed within one year[ ], [B & D] may tender in payment of the allowed claim one of the segregated lots in full satisfaction of the amount claimed." (Case No. 16-00978, Dkt. No. 30.) The B&D plan was confirmed on August 24, 2016, and the stipulation was approved the same day. (Case No. 16-00978, Dkt. No. 51.)

In the Babilonia case, the stipulation was incorporated and made part of the second amended chapter 11 plan, which was confirmed by the court on August 23, 2017. (Case No. 16-01148, Dkt. Nos. 182, 215, & 216.) Of note, the Babilonia Plan includes a provision (the "Vesting and Lien Cancellation Clause") which states:

Cancellation of Existing Indebtedness and Liens. Except as may otherwise be provided for in the Plan, on the Confirmation Date, pursuant to Sections 363(k), 1123(a)(5), 1129(b)(2)(A)(ii), and 1141(c) of the Bankruptcy Code, all Property transferred, treated, or dealt with in the Plan or the Confirmation Order is free and clear of all liens, Claims, interests, and encumbrances. Except as may otherwise be provided for in the Plan, on the Effective Date, all credit agreements, promissory notes, mortgages, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against the Debtor, together with any and all Liens securing the same, shall be cancelled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, and Debtor and its guarantors' obligations thereunder shall be deemed cancelled, discharged and released. To the extent deemed necessary or advisable by Debtor, any holder of a Claim shall promptly provide Debtor with an appropriate instrument of cancellation, discharge or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation,

4

discharge or release, including the cancellation, discharge or release of any Lien securing the Claim.

(Case No. 16-01148, Dkt. 182 at p. 23.)

The debtors did not sell the collateral within the time provided under the stipulations nor did the debtors "deliver and tender" the collateral to the bank following the expiration of the deadline.  On October 24, 2018, Banco Popular filed an informative motion so stating in the Babilonia case.  (Case No. 16-01148, Dkt. No. 266.)  While this motion did not ask for any specific relief, it nevertheless signaled the start of a contested matter that culminated in the bankruptcy court's April 17, 2019 opinion and order in the Babilonia case (the "Babilonia Opinion").  (Case No. 16-01148, Dkt. No. 331.)  A separate, shorter order adopting the legal reasoning of the Babilonia Opinion was entered in the B&D case that same day (the "B&D Opinion").  (Case No. 16-00978, Dkt. No. 119.)

Among the matters considered as part of the contested matter were motions filed by Banco Popular in both cases seeking the transfer of the bank's collateral and the cancellation of the pre-transfer liens on account of the debtors' default under the terms of the stipulations.[4] (Case No. 16-01148, Dkt. No. 276; Case No. 16-00978, Dkt. No. 100.)  The debtors opposed both motions, arguing that the bank no longer held a secured claim in either case and was not entitled to the turnover of the collateral.

In the Babilonia Opinion, the bankruptcy court essentially denied Banco Popular's transfer motion, finding that Babilonia was not in default under the stipulation, that Banco Popular's liens were not preserved under the confirmed plan, and that Babilonia was thus "not

---

[4]/A more thorough recitation of the somewhat complicated procedural history leading up to the bankruptcy court's April 2019 opinions and orders and the subsequent BAP appeal can be found in the BAP's opinion and order, dated December 23, 2020.  Santiago, 2020 Bankr. LEXIS 3604 at *9-*26.

obligated to transfer the properties." (Case No. 16-01148, Dkt. No. 331 at p. 7.) A separate, shorter order adopting the legal reasoning of the Babilonia opinion to deny Banco Popular's transfer motion was entered in the B&D case that same day (the "B&D Opinion"). (Case No. 16-00978, Dkt. No. 119.)

Banco Popular filed motions for reconsideration in both cases that the bankruptcy court denied. (Case No. 16-01148, Dkt. Nos. 334 & 355; Case No. 16-00978, Dkt. Nos. 121 & 139.) Banco Popular then appealed to the BAP.

In the opinion and order, dated December 23, 2020, and ensuing judgment (the "BAP Opinion"), the BAP vacated the bankruptcy court's opinions and orders denying Banco Popular's transfer motions in both cases as well as the bankruptcy court's denial of the two motions for reconsideration, and remanded the cases to the bankruptcy court "for further proceedings consistent with this opinion where the bankruptcy court may determine the consequences of the default." Santiago, 2020 Bankr. LEXIS 3604 at *42.

In determining that the bankruptcy court had erred in finding that the debtors did not default on their obligations under the respective stipulations and plans, the BAP held that "[a]fter reviewing the Babilonia Stipulation and Babilonia Plan de novo, as we are required to do, we conclude that each is unambiguous as it relates to the obligation of Babilonia to convey the Collateral and that Babilonia was in default under the Babilonia Stipulation and, consequently, the Babilonia Plan." Id. at *39. And, "for the same reasoning . . . it was error for the bankruptcy court to determine . . . that there was no event of default under the B & D Stipulation and the B & D Plan." Id. at *41-*42.

While the BAP appeal was pending, the two cases were reassigned to the undersigned. (Case No. 16-01148, Dkt. No. 426; Case No. 16-00978, Dkt. No. 181.) On January 6, 2021, the debtors filed a motion for rehearing with the BAP, which was denied. (Case No. 16-01148, Dkt. Nos. 460-1 & 460-2.)

Following the remand, on March 30, 2021, the bankruptcy court entered the following order in the Babilonia case after reviewing Banco Popular's initial transfer motion:

> If Banco Popular de Puerto Rico wishes to obtain from this court an order to effectuate, pursuant to the confirmed plan, the transfer of properties contemplated in its motion at docket #276, the bank should submit a proposed form of order and writ as well as updated title search reports as to the properties. The bank should also state on what basis it understands that the mortgage in favor of FirstBank Puerto Rico as to Property #9678, Section 2 of the Arecibo property registry, can be canceled, given that the plan does not appear to have been notified to FirstBank.

(Case No. 16-01148, Dkt. No. 438.) A similar order was entered in the B&D case that same day, stating:

> If Banco Popular de Puerto Rico wishes to obtain from this court an order to effectuate, pursuant to the confirmed plan, the transfer of property contemplated in its motion at docket #100, the bank should submit a proposed form of order and writ as well as an updated title search report as to the property.

(Case No. 16-00978, Dkt. No. 198.)

On August 27, 2021, Banco Popular renewed its motion seeking the transfer of four properties and the cancellation of the pre-transfer liens in the Babilonia case, informing that it had reached a settlement agreement with Firstbank Puerto Rico that resolved any issue with regard to Firstbank's lien on Property #9678. (Case No. 16-01148, Dkt. No. 441.) The motion included updated title studies for the four properties. Id. The bank filed a similar motion in the B&D case as to the one property at issue there that also contained an updated title study.

7

(Case No. 16-00978, Dkt. No. 201.) That same day, Banco Popular also filed a motion in the Babilonia case seeking to withdraw funds consigned in the court corresponding to insurance proceeds issued by Universal Insurance Company in favor of the debtors and Banco Popular in the amount of $81,089.12 plus interest. (Case No. 16-01148, Dkt. No. 442.)

On August 31, 2021, Banco Popular filed an informative motion in the Babilonia case indicating that Universal Insurance Company had issued a joint check payable to Motel Tropical, Inc. and/or C-Da Media and Banco Popular, a portion of which corresponded to insurance proceeds related to two of Babilonia's properties. (Case No. 16-01148, Dkt. No. 444.) Banco Popular had placed an administrative hold on Motel Tropical Inc.'s account for the amount of the insurance proceeds during the pendency of the BAP appeal, and was now going to apply those proceeds to the debts owed by Babilonia under Banco Popular's claim. Id. The bank clarified that the funds in question were not consigned with the court or subject to the automatic stay, and that it was providing notice of this action "solely for transparency purposes as the record is clear that the [d]ebtors no longer hold any interest over such funds." Id. at p. 6.

On October 4, 2021, the debtors filed their opposition to Banco Popular's three motions in both cases. (Case No. 16-01148, Dkt. No. 452; Case No. 16-00978, Dkt. No. 210.) On November 5, 2021, Banco Popular replied, and the debtors have since sur-replied.[5] (Case No. 16-01148, Dkt. Nos. 460 & 468; Case No. 16-00978, Dkt. Nos. 218 & 226.)

---

[5]/The debtors filed separate oppositions in each case, but the replies and sur-replies are identical and were filed under both captions.

### III.    Legal Discussion.

The court will address each of Banco Popular's pending motions, and the oppositions thereto, in turn.

At the outset, while their opposition references the three motions filed by Banco Popular after the case was remanded, Babilonia does not specifically address the bank's motion regarding insurance proceeds held in an account belonging to Motel Tropical, Inc.[6] (Case No. 16-01148, Dkt. No. 444.)  Given that this motion seeks no relief, however, and is just informative in nature, filed "solely for transparency purposes as the record is clear that the [d]ebtors no longer hold any interest over such funds," the court simply notes it.

**The Transfer Motions**

As to Banco Popular's motions to transfer the properties free and clear of liens, the bank contends that the analysis regarding the transfer motions is "simple"and "straightforward": namely, that the BAP already determined both that the debtors breached the stipulations, as incorporated into the plans, by not "tendering and delivering" the collateral following their failure to sell them within the agreed upon time, and that the bank is entitled to the collateral free and clear of all liens.  (Case No. 16-01148, Dkt. No. 460 at pp. 3-4, 14-17; Case No. 16-00978, Dkt. No. 218 at pp. 3-4, 14-17.)  Further, Banco Popular points to the March 30, 2021 orders enter by the bankruptcy court as additional evidence that the proper relief has already been decided by this court.  Id.  Banco Popular maintains that the arguments raised by the debtors have either already been considered and rejected by the BAP, or that the debtors' positions are "inconsistent and contrary" to those taken earlier in the litigation and should

---

[6]/The B&D opposition does not refer to the motion to withdraw consigned funds or the informative motion, as no equivalent motion was filed in that case.  (Bankr. Dkt .No. 16-978, Dkt. No. 210.)

thus be disregarded under the principle of judicial estoppel. (Case No. 16-01148, Dkt. No. 460 at pp. 3-4, 14-21; Case No. 16-00978, Dkt. No. 218 at pp. 3-4, 14-21.)

Babilonia counters that the BAP's holding is narrower than Banco Popular's reading suggests.[7] (Case No. 16-01148, Dkt. No. 452 at pp. 5-6.) While the debtors concede that they breached the stipulation, they stress that the BAP did not make any determination as to what the appropriate remedy should be. Id. The debtors argue that given that this breach occurred pre-confirmation, and since this claim was not specifically preserved in the confirmed chapter 11 plan, of which the bank voted in favor, that the claim was discharged by operation of section 1141(c). (Case No. 16-01148, Dkt. No. 452 at pp. 5-9.) Alternatively, the debtors contend that even if the bankruptcy court determines that Banco Popular has an enforceable claim, meaning that the liens were not discharged upon confirmation, that turnover of the collateral is not a viable remedy since it is not contemplated in the stipulation and because such a remedy violates Puerto Rico law. (Case No. 16-01148, Dkt. No. 452 at pp. 9-10.) Rather, Babilonia maintains that the bank has to foreclose on the collateral. Id.

As an initial matter, the court points out that its March 30, 2021 orders to which Banco Popular refers did not make any determination as to the proper remedy for the debtors' breach. (Case No. 16-01148, Dkt. No. 438; Case No. 16-00978, Dkt. No. 198.) Instead, the court was merely trying to ensure that there was no inherent defect in the relief the bank was requesting that would violate the due process rights of a non-party secured creditor, such as First Bank.

---

[7] In its separate opposition, B&D argues only that the transfer motion should be denied because "Banco Popular does not have a pre-petition right to transfer of the property to itself in payment of a secured debt without a foreclosure procedure and a public auction." (Bankr. Case No. 16-00978, Dkt. No. 210 at p. 2.)

That being said, the court largely agrees with Banco Popular's analysis. The debtors' first argument, that the bank's pre-confirmation claim for breach was discharged upon confirmation under section 1141(c), can be quickly disposed of. As a practical matter, this would mean that the BAP remanded cases for which no relief could be granted. If the BAP understood that Banco Popular's claim against the debtors for breach of the stipulations was discharged upon confirmation under section 1141(c), leaving the bank with no relief, it would have dismissed the appeals on equitable mootness grounds rather than remanded the cases. See In re Pub. Serv. Co., 963 F.2d 469, 471-72(1st Cir. 1992).

Moving to the debtors' second argument, that turnover of the collateral was not a remedy contemplated in the stipulation and violates Puerto Rico law, the BAP already decided this issue in favor of Banco Popular:

> in this case no express terms of the Babilonia Stipulation or Babilonia Plan limit BPPR's rights and remedies upon the failure of Babilonia to "tender and deliver" the Collateral. We do not rely on equity, but rather on the terms of the Babilonia Stipulation and Babilonia Plan in ruling that Babilonia was in default by the failure to "tender and deliver" the Collateral. No provision of the Babilonia Stipulation or Babilonia Plan expressly terminated those obligations or limited BPPR's remedies to seek an order compelling transfer of the Collateral by filing the Transfer Motion on or after August 31, 2017. If the Babilonia case had been closed after that date, BPPR could have moved to reopen the case to seek to enforce the terms of the Babilonia Plan in the bankruptcy court or could have sought to enforce the terms of the Babilonia Plan or damages arising from a default in the courts of Puerto Rico.

Santiago, 2020 Bankr. LEXIS 3604 at *37-*38.

Contrary to the debtors' assertion, the stipulation, in fact, specifically calls for such a remedy in the event that the collateral were not sold within the time frame contemplated in the agreement:

11

> In the event that no sale were to take place prior to the expiration of the one (1) year period detailed above, on or before August 23, 2017, Babilonia shall deliver and tender any and all of the remaining Collateral to BPPR free and clear of all liens, claims or encumbrances, in full satisfaction and payment of the outstanding balance of the Secured Claim.

(Case No. 16-01148, Dkt. No. 75 at p. 5.) Elsewhere, the stipulation states:

> Upon the occurrence of any Event of Default, as provided above, all of the Loans, Collateral, BPPR Claims and Debtors' obligations with BPPR shall revert to their original, pre-petition state, and their indebtedness shall become immediately due and payable without further notice by BPPR, and BPPR shall have the right to enforce any and all remedies under this Stipulation, Loan Documents, at law or in equity.

(Case No. 16-01148, Dkt. No. 75 at p. 7.)

Furthermore, the BAP at various points in its opinion and order explicitly stated that turnover of the collateral was one possible remedy for the debtors' breach:

> Further, the language of the Babilonia Stipulation does not support an interpretation that Babilonia's agreement not to seek to close the case before August 31, 2017 (three days after entry of orders approving the Babilonia Stipulation and confirming the Babilonia Plan—and prior to the "Effective Date" of that plan) limits in any way BPPR's remedies in the event of a default under the Babilonia Stipulation as incorporated by that plan, including its potential right to compel specific performance of Babilonia's obligation to transfer the Collateral.

Santiago, 2020 Bankr. LEXIS 3604 at *35-*36;

> After reviewing the Babilonia Stipulation and Babilonia Plan de novo, as we are required to do, we conclude that each is unambiguous as it relates to the obligation of Babilonia to convey the Collateral and that Babilonia was in default under the Babilonia Stipulation and, consequently, the Babilonia Plan.

Id. at *39; and

> the terms of the Babilonia Stipulation, as incorporated by the Babilonia Plan, impose a clear obligation on Babilonia to transfer the Collateral.

Santiago, 2020 Bankr. LEXIS 3604 at *37.

Reading these provisions together, the court agrees with the BAP's analysis in finding that turnover is a viable remedy for the debtors' breach. The court finds the debtors' other arguments unavailing.

Having determined that turnover is one possible remedy here, the court acknowledges that foreclosure is another. Yet, despite the debtors' opposition to turnover, it is actually in the debtors' best interests. As a payment-in-kind, the turnover of all of the collateral to Banco Popular would be in full satisfaction of the bank's secured claim. The stipulation echoes this, stating that in the event the collateral was not sold within the one-year period, that "Babilonia shall deliver and tender any and all of the remaining Collateral to BPPR free and clear of all liens, claims or encumbrances, in full satisfaction and payment of the outstanding balance of the Secured Claim." (Case No. 16-01148, Dkt. No. 75 at p. 5.) And, the transfer of the bank's collateral under the terms of the confirmed plan, which incorporated the stipulation, would exempt the transactions from transfer taxes pursuant to Section 1146.

The foreclosure process, on the other hand, in addition to being more time consuming, costly, and inefficient, also would leave the debtors with a deficiency claim if the sale of the secured collateral fell short of the full debt owed. Given this, and bearing in mind that turnover was the remedy the parties' specifically bargained for in the stipulation, the court finds that the proper remedy for the debtors' breach is the turnover of the collateral free and clear of liens.

**The Motion to Withdraw Consigned Funds**

The court now turns to Banco Popular's motion to withdraw the insurance proceeds consigned with the court. (Case No. 16-01148, Dkt. No. 442.) In the Babilonia Opinion, the

13

bankruptcy court, in addition to finding that the debtors had not defaulted on their obligations under the stipulation, also found that Banco Popular's liens were "extinguished upon confirmation of the plan" pursuant to section 1141(c) on account of the stipulation's Ratification Clause. (Case No. 16-01148, Dkt. No. 331 at p. 6.) The bankruptcy court went on to find that "[i]t is clear on its terms that Banco Popular did not preserve a lien in the Stipulation nor in the Plan. Therefore, the liens expired on the date the Plan was confirmed - August 28, 2017." Id. In so finding, the bankruptcy court relied on a portion of the stipulation's Ratification Clause, which states:

> Debtors hereby ratify, reaffirm, confirm, consent to and acknowledge all of the terms, priority and conditions of security interests, mortgages or liens over the Collateral provided for in the Loans, the Collateral, and the BPPR Claims, as well as Debtors' obligations under such Loan Documents, until the confirmation of the Chapter 11 Plan.

(Case No. 16-01148, Dkt. No. 331 at p. 6.) The court reasoned that this clause "puts a limit on the [s]tipulation, which also sets an expiration date on the liens." Id.

The BAP vacated the Babilonia Opinion, holding that it was premised on the erroneous finding that the debtors' failure to turnover the collateral did not constitute a breach of the stipulation. In doing so, however, the BAP did not adjudicate the status of Banco Popular's liens, stating:

> We do not need to reach the issue of whether the BPPR liens were eliminated or revived, because we conclude that Babilonia's obligation to "deliver" the Collateral arises under the Babilonia Plan and Babilonia Stipulation and is independent of BPPR's lien rights. To the extent that the April 2019 Orders can be read to rule that the Vesting and Lien Cancellation Clause vested the Collateral in the Debtor free and clear of any "Claim" of BPPR to enforce this obligation to transfer, we reject that interpretation because the terms of the Babilonia Stipulation, as incorporated by the Babilonia Plan, impose a clear obligation on Babilonia to transfer the Collateral. Thus, that provision falls within the exception set forth in the Vesting and Lien Cancellation Clause.

14

Further, the Babilonia Plan cannot be read to vest property free and clear of its own effectuating provisions.

Santiago, 2020 Bankr. LEXIS 3604 at *36-*37.

Babilonia argues that while a determination as to the status of Banco Popular's liens may not have been necessary to decide whether the debtor defaulted on the stipulation, it is required to adjudicate whether the bank may withdraw the insurance proceeds consigned with the court. (Case No. 16-01148, Dkt. No. 452 at pp. 10-13.) Babilonia contends that by the terms of the joint motion consigning the funds with the bankruptcy court, the funds can only be disbursed once "the controversy is final an [sic] unappealable." (Case No. 16-01148, Dkt. No. 452 at p. 10.) While the word "controversy" is somewhat vague without context, per the parties' joint motion, the prevailing party may only request an order disbursing the funds "upon a final and unappealable determination in connection with the controversy," referring to the Babilonia Opinion that made a determination "as to the existence of [Banco Popular]'s liens after the confirmation of the [d]ebtors' [p]lan of [r]eorganization." (Case No. 16-01148, Dkt. No. 452 at pp. 1-2.) Babilonia also asserts that Banco Popular does not have a security interest over the proceeds of a post-petition claim against an insurance policy also obtained post-petition. (Case No. 16-01148, Dkt. No. 452 at pp. 10-12.)

Finally, Babilonia accuses Banco Popular of acting in bad faith by waiting for the debtors to fix–at their own expense–the collateral, which was damaged in Hurricane Maria, before moving for their turnover. (Case No. 16-01148, Dkt. No. 452 at pp. 12-13.) And, that the bank represented to Babilonia that it would reimburse them for all the repairs, but retracted that offer after the repairs had already been made and paid for. Id. Allowing the collateral to be turned over to Banco Popular now while allowing the bank to also withdraw

15

the consigned insurance proceeds, the debtors also asserts, would allow the bank to receive more that it would be entitled to under the confirmed plan. (Case No. 16-01148, Dkt. No. 452 at pp. 13-14.)

Banco Popular counters that it does have a security interest over the proceeds of the insurance policy through the language of the mortgage deeds on the collateral, which state in pertinent part:

> In case a loss occurs in the Mortgage Property and that is paid by the Insurance Company to the Creditor will have the discretion to opt to use the product of the policies to rebuild the damaged property and/or to pay an installment of the Mortgage Promissory Note in the following order: first, to cover interest owed; second, to cover additional sums guaranteed by this mortgage; and third, to cover the payment of principal. The remnant of the insurance compensation, if any, will correspond to the Mortgage Debtor.

(Case No. 16-01148, Dkt. No. 460 at pp. 21-24.)   Id.  Banco Popular argues that upon the debtors' breach, as found by the BAP in its opinion and order, the bank's rights and the debtors' obligations reverted to their original, pre-petition state under the stipulation's Default Clause, which was incorporated into the Babilonia plan.  Id.  Banco Popular therefore concludes that since, pre-petition, under the mortgage deeds, the bank had the right to apply the insurance proceeds to installments of the notes, that this entitles it to the insurance proceeds now as well.  (Case No. 16-01148, Dkt. No. 460 at p. 24.)  Banco Popular also addresses the other arguments raised by Babilonia, distinguishing case law cited by the debtor, which concerned security interests governed by Article 9 of the Uniform Commercial Code, not mortgage law.  (Case No. 16-01148, Dkt. No. 460 at p. 23.)

Finally, as to the argument that the bank would be receiving double compensation if it were allowed to obtain the collateral free and clear of liens as well as the insurance proceeds,

16

the bank places the blame for this on Babilonia. Banco Popular maintains that upon the expiration of the sale period agreed to in the stipulation, Babilonia could have transferred the collateral to Banco Popular in full satisfaction of its claim, and were, in fact, obligated to do so under the stipulation, but opted not to. (Bankr. Case No. 16-01148, Dkt. No. 460 at p. 25.) The bank also denies that it offered to refund Babilonia for the repairs made to the collateral. (Bankr. Case No. 16-01148, Dkt. No. 460 at pp. 25-26.)

Addressing the status of Banco Popular's liens, the court now rejects the reasoning of the Babilonia Opinion with respect to its finding that "it is clear on its terms that Banco Popular did not preserve a lien in the Stipulation nor in the Plan." (Case No. 16-01148, Dkt. No. 331 at p. 6.) On its face, the portion of the Ratification Clause cited by the bankruptcy court deals solely with the debtors' actions and obligations under the stipulation, not Banco Popular's. Id. Even if the court were to interpret this portion of the Ratification Clause to create some ambiguity as to the status of Banco Popular's liens under the stipulation and plan, which it does not, the court bears in mind the principle under Puerto Rico law that "[w]hen a contract contains several sections or clauses, they 'should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together.'" Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc., 387 F. Supp. 3d 163, 167 (D.P.R. 2017) (quoting Yordan v. Burleigh Point, Ltd., 552 F. Supp. 2d 200, 204 (D.P.R. 2007)) (other citation omitted).

The second amended Babilonia plan, which was confirmed by the court without objection, classifies Banco Popular as a secured creditor under Class 1(A). (Case No. 16-01148, Dkt. No. 182 at p. 12.) The plan provides that the bank "shall receive the treatment and

17

distribution afforded" by the stipulation, which as stated above calls for the turnover the

collateral to Banco Popular upon the failure to sell them timely and the reversion of the bank's

claims and debtors' obligations to revert to their prepetition status. (Case No. 16-01148, Dkt.

Nos. 75 & 182 at p. 14.) Under the treatment for unsecured creditors, the plan also states:

> Once the matter regarding the payment to the Secured Claimant Banco Popular, is determined [sic] be, through the reduction of the secured claims due to the sale of all or certain of the properties encumbered or the acceptance of the properties in payment of the allowed secured claim. The unsecured creditors will receive dividend payments from the Debtor's salary and the proceeds from the Hostel Business.
>
> Attached to the Amended Disclosure Statement, Debtor in Possession has disclosed three alternate scenarios with [sic] may apply depending if the properties encumbered by Banco Popular are either sold for the market values, sold for the liquidation value or tendered in payment of the claim.
>
> The amount of the unsecured claim of Banco Popular will vary and depend on which one of the three scenarios occurs and upon applying the proceeds and or property Debtor will be able to address the unsecured creditors' claims. The dividend and the percentage of distribution can only be ascertained once either of the scenarios occurs.

(Case No. 16-01148, Dkt. No. 182 at p. 17.)

> The amended disclosure statement, in turn, provides that:
>
> Th[e] Liquidation Analysis may change substantially depending on the outcome of the terms of the stipulation with Banco Popular and if and when the properties are sold or turnover. [sic] Upon the sale or turnover of any of the properties Debtor will submit a Liquidation Analysis that will reflect the [c]hanges in the value of the Estate and its effect on distribution to unsecured claimants. Alternate liquidation scenarios have been submitted with the present Disclosure Statement.
>
> Once the issue concerning the payment to secured creditor Banco Popular is settled by the sale of properties within the time stipulated and any extension time thereof and encumbered by mortgage notes and the principal amount owed reduced upon application of proceeds or the turnover of properties in payment thereof the Debtor will be in a position to address the payment to all

18

other unsecured claimants. Thus any proposed dividends to the unsecured claimant cannot be determined as of the date of the present Disclosure Statement. The amount of said dividend once determined will be commenced one year from the date of the present Disclosure Statement.

(Case No. 16-01148, Dkt. No. 181 at pp. 20-21.)

Reading the terms of the stipulation, the second amended plan, and the amended disclosure statement together, the bankruptcy court finds that the Ratification Clause, in conjunction with section 1141(c), did not set an "expiration date on [Banco Popular's] liens," and that Babilonia's default under the stipulation triggered the reversion of the bank's claims and the debtors obligations under the mortgage deeds on the property.  (Case No. 16-01148, Dkt. No. 331 at p. 6.)  Accordingly, Banco Popular will be entitled as a secured creditor to the insurance proceeds that have been consigned in the court once the controversy is final and unappealable.[8]

As to the debtors' position that allowing Banco Popular to obtain both the consigned funds and the collateral would effectively allow the bank to be doubly compensated, this is essentially an unjust enrichment argument.  Such a remedy, however, sounds in equity, and the debtors have unclean hands here because they are the parties that breached the stipulation and the terms of the confirmed plan.  The court thus finds the debtors' argument unavailing. See Conway v. Licata, 2015 U.S. Dist. LEXIS 116310, at *55 (D. Mass. Aug. 31, 2015) (denying unjust enrichment count where counterclaimants had unclean hands due to their negligent misrepresentations).

---

[8]/When those conditions are met, Banco Popular shall file a motion so informing the court.

19

Regarding the debtors' assertion that, after the plan was confirmed, the bank told Babilonia that it would reimburse them for the repairs to the collateral, the court notes that the stipulation, as incorporated into the plan, provides that "[n]o waiver, modification or amendment of any of provisions of this Stipulation shall be effective unless set forth in writing and signed by BPPR and Debtors, and approved by this Bankruptcy Court." (Case No. 16-01148, Dkt. No. 75 at p. 8.)  Any alleged agreement by the parties regarding this issue was not submitted to the court for its approval, as required by the stipulation.  Therefore, the court rejects this argument.

**IV.     Conclusion.**

Based on the foregoing, the court hereby grants Banco Popular's transfer motions at docket number 441 in case number 16-01148 and at docket number 201 in case number 16-00978. Banco Popular is ordered to submit, within 14 days, a new, proposed form of order and writ in each case in conformance with this opinion and order.  The court also grants Banco Popular's motion to withdraw consigned funds in case number 16-01148 at docket number 442.  An order of disbursement, however, will not issue until this opinion and order becomes final and unappealable.  And, the court notes the informative motion filed by Banco Popular at docket number 444 in case number 16-01148.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31[th] day of March 2022.

Edward A. Godoy
U.S. Bankruptcy Judge

20